# EXHIBIT A

## No. 23-1911

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

Shelby Roberts,

Plaintiff-Appellant,

*v.*

Carter-Young, Inc.,

Defendant-Appellee.

On Appeal from the United States District Court
for the Middle District of North Carolina
Hon. William L. Osteen, Jr.
Case No. 1:22-cv-01114-WO-LPA

## BRIEF OF *AMICI CURIAE*
## CONSUMER FINANCIAL PROTECTION BUREAU
## AND FEDERAL TRADE COMMISSION
## IN SUPPORT OF PLAINTIFF-APPELLANT

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Deputy General Counsel*
Kristin Bateman
  *Assistant General Counsel*
Karen S. Bloom
  *Senior Counsel*
Consumer Financial Protection
Bureau
1700 G Street NW
Washington, DC 20552
(202) 344-5146

karen.bloom@cfpb.gov

Anisha S. Dasgupta
   *General Counsel*
Mariel Goetz
   *Acting Director of Litigation*
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2763
mgoetz@ftc.gov

# TABLE OF CONTENTS

Table of Citations ................................................................. ii

Interest of Amici Curiae ...................................................... 1

Statement ............................................................................. 3

    A.   The Fair Credit Reporting Act .................................... 3

    B.   Factual and Procedural Background ........................... 6

Summary of Argument ....................................................... 11

Argument ............................................................................ 12

I.   The FCRA Requirement for Furnishers to Reasonably
    Investigate Disputes Applies to Disputes that Implicate
    Legal Issues, Not Just Disputes Raising Purely Factual
    Questions .................................................................... 12

    A.   The FCRA's Text Applies Equally to Disputes that Could
       Be Characterized as Legal ......................................... 12

    B.   The Fact That Some Purportedly "Legal" Disputes Have
       Colorable Arguments on Both Sides Does Not Excuse
       Furnishers from Considering Them ........................... 15

    C.   An Atextual Exception for "Legal" Disputes Could
       Swallow the Reasonable Investigation Rule .............. 21

II.  To Conduct a Reasonable Investigation, the Furnisher May
    Need to Look Beyond Information Already in its Possession ....... 26

Conclusion .......................................................................... 30

## TABLE OF CITATIONS

**Cases**                                                           **Page(s)**

*Bakker v. Grutman,*
942 F.2d 236 (4th Cir. 1991)..................................................15

*Chiang v. Verizon New Eng. Inc.,*
595 F.3d 26 (1st Cir. 2010) .................................................17

*Chuluunbat v. Experian Info. Sols., Inc.,*
4 F.4th 562 (7th Cir. 2021) .......................................... 22, 23

*Cornock v. Trans Union LLC,*
638 F. Supp. 2d 158 (D.N.H. 2009) ................................ 22, 23

*Daugherty v. Ocwen Loan Servicing, LLC,*
701 F. App'x 246 (4th Cir. 2017)....................................26, 28

*Denan v. Trans Union LLC,*
959 F.3d 290 (7th Cir. 2020)....................................................9

*Dennis v. BEH-1, LLC,*
520 F.3d 1066 (9th Cir. 2008) ............................................. 24

*Gorman v. Wolpoff & Abramson, LLP,*
584 F.3d 1147 (9th Cir. 2009)..................................................4

*Gross v. CitiMortgage, Inc.,*
33 F.4th 1246 (9th Cir. 2022) .......................................... 9, 18

*Hinkle v. Midland Credit Mgmt., Inc.,*
827 F.3d 1295 (11th Cir. 2016)......................................... *passim*

*Hopkins v. I.C. Sys.,*
2020 WL 2557134 (E.D. Pa. May 5, 2020)............................. 24

*Johnson v. MBNA Am. Bank, NA,*
357 F.3d 426 (4th Cir. 2004)................................................. 27

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,*
729 F.3d 99 (2d Cir. 2013)..................................................... 22

*Losch v. Nationstar Mortg., LLC*,
  995 F.3d 937 (11th Cir. 2021) ................................................................. 24

*Mader v. Experian Info. Sols., Inc.*,
  56 F.4th 264 (2d Cir. 2023) ............................................................. 16, 24

*Mohnkern v. Equifax Info. Servs., LLC.*,
  2021 WL 5239902 (W.D.N.Y. Nov. 10, 2021) ......................................... 10

*Myrick v. Equifax Info. Servs., LLC.*,
  2017 WL 4798154 (E.D.N.C. Oct. 24, 2017) ......................................... 29

*Nelson v. Ocwen Loan Servicing, LLC*,
  2014 WL 2866841 (D. Or. June 23, 2014) ............................................. 24

*Petras v. Navy Fed. Credit Union*,
  2022 WL 526138 (D. Nev. Feb. 22, 2022) ............................................. 29

*Roberts v. Carter-Young, Inc.*,
  2023 WL 4366059 (M.D.N.C. July 6, 2023) ........................ 6, 9, 10, 26, 28

*Saunders v. Branch Banking and Tr. Co. of Va.*,
  526 F.3d 142 (4th Cir. 2008) ................................................................. 20

*Sessa v. Linear Motors, LLC*,
  576 F. Supp. 3d 1 (S.D.N.Y. 2021) ....................................................... 23

*Sessa v. Trans Union, LLC*,
  74 F.4th 38 (2d Cir. 2023) ................................................10, 18, 23, 24, 25

*Unicolors, Inc. v. H&M Hennes & Mauritz, LP*,
  595 U.S. 178 (2022) ............................................................................. 13

*Watson v. Citi Corp.*,
  2009 WL 161222 (S.D. Ohio Jan. 22, 2009) ......................................... 29

**Statutes**

15 U.S.C. § 1681a(d) .............................................................................. 3

15 U.S.C. § 1681i(a)(1)(A) ................................................................. 5, 13

15 U.S.C. § 1681i(a)(2) ...................................................................... 5, 13

iii

15 U.S.C. § 1681i(a)(5)(A) .................................................... 5, 28

15 U.S.C. § 1681i(a)(6) ........................................................ 5

15 U.S.C. § 1681i(b)-(c) ...................................................... 5

15 U.S.C. § 1681n .............................................................. 6

15 U.S.C. § 1681o .............................................................. 6

15 U.S.C. § 1681s(a) ........................................................ 1, 2

15 U.S.C. § 1681s(a)-(c) ..................................................... 1

15 U.S.C. § 1681s(e) ......................................................... 1

15 U.S.C. § 1681s-2(a)(8) .................................................. 2, 4

15 U.S.C. § 1681s-2(b) ...................................................... 4, 5

15 U.S.C. § 1681s-2(b)(1) ................................................. 13, 18

15 U.S.C. § 1681s-2(b)(1)(A) .............................................. 2, 12

15 U.S.C. § 1681s-2(b)(1)(B) ................................................ 5

15 U.S.C. § 1681s-2(b)(1)(C) ................................................ 5

15 U.S.C. § 1681s-2(b)(1)(D) ................................................ 5

15 U.S.C. § 1681s-2(b)(1)(E) .............................................. 5, 20

15 U.S.C. § 1681s-2(c)(1) .................................................... 2

15 U.S.C. § 45(a) ............................................................. 1

## Regulations

12 C.F.R. § 1022.43(a) ....................................................... 19

12 C.F.R. § 1022.43(a)(1) .................................................... 19

## Other Authorities

*Accuracy*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/accuracy (last visited Dec. 7, 2023) ..................................................................13

Appellees Answer Br., Holden v. Holiday Inn Club Vacations, Inc., No. 22-11014 (11th Cir. Feb. 8, 2023) ..................................................13

*Complete*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/complete (last visited Dec. 7, 2023) ..................................................................14

Consumer Fin. Prot. Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System (2012), https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf ........................................................... 3

Consumer Fin. Prot. Bureau, Annual Report of Credit and Consumer Reporting Complaints (Jan. 2023), https://files.consumerfinance.gov/f/documents/cfpb_fcra-611-e_report_2023-01.pdf cfpb_fcra-611-e_report_2023-01.pdf .................. 6

Fed. Trade Comm'n, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations (2011), https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf...................................... 27

*Investigate*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/investigate (last visited Dec. 7, 2023) ..................................................................15

S. Rep. No. 91-517 ........................................................... 3

## INTEREST OF AMICI CURIAE

To ensure fair and accurate credit reporting, the Fair Credit Reporting Act (FCRA or the Act), 15 U.S.C. § 1681 *et seq*., requires consumer reporting agencies (CRAs) and entities that furnish information to CRAs (furnishers) to follow various requirements when they compile and disseminate personal information about individuals. The Consumer Financial Protection Bureau (CFPB or Bureau) has exclusive rule-writing authority for most provisions of the FCRA. *Id*. § 1681s(e). The Bureau interprets and, along with various other federal and state regulators, enforces the Act's requirements. *Id*. § 1681s(a)–(c).

The Federal Trade Commission (FTC or Commission) has been charged by Congress with the mission to protect consumers from deceptive or unfair trade practices. 15 U.S.C. § 45(a). As part of that mission, the Commission has long played a key role in the implementation, enforcement, and interpretation of the FCRA. The FTC enforces the FCRA through Section 5 of the FTC Act. Congress deemed a violation of the FCRA to "constitute an unfair or deceptive act or practice in commerce, in violation of section 5(a) of the [FTC Act]." 15 U.S.C. § 1681s(a). And the FCRA grants the Commission "such procedural, investigative, and

enforcement powers . . . as though the applicable terms and conditions of the Federal Trade Commission Act were part of [the FCRA]." *Id.*

When a CRA notifies a furnisher of a dispute about information it furnished to the CRA, the FCRA requires the furnisher to "conduct an investigation with respect to the disputed information." *Id.* § 1681s-2(b)(1)(A). This case presents a question about the scope of a furnisher's duty to investigate this sort of "indirect dispute" — i.e., a dispute filed by a consumer with a CRA, which the CRA then forwards to the furnisher.[1]

The district court held that furnishers need not investigate indirect disputes involving purportedly "legal" questions. This decision has no basis in the text of the FCRA, unduly narrows the scope of a furnisher's obligations, and runs counter to the purpose of the FCRA to require a reasonable investigation of consumer disputes. If it stands, the decision would limit consumers' ability to ensure that potentially harmful inaccuracies on their consumer reports are corrected. Given their role in administering and enforcing the FCRA, the Bureau and the FTC have a

---

[1] In contrast, a "direct dispute," addressed by a different provision of the FCRA, 15 U.S.C. § 1681s-2(a)(8), is a dispute that the consumer files directly with the relevant furnisher. The FCRA does not provide a private right of action to consumers for violations of furnishers' obligation to investigate direct disputes. *Id.* § 1681s-2(c)(1).

substantial interest in correcting the decision below and clarifying the governing legal standards.

## STATEMENT

### A.   The Fair Credit Reporting Act

1. Information contained in consumer reports has critical effects on Americans' daily lives.[2] Consumer reports are used to evaluate consumers' eligibility for loans and determine the interest rates they pay, ascertain their eligibility for insurance and set the premiums they pay, and assess their eligibility for rental housing and checking accounts. Prospective employers commonly use consumer reports in their hiring decisions. *See generally* Consumer Fin. Prot. Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System (2012), https://files.consumerfinance.gov /f/201212_cfpb_credit-reporting-white-paper.pdf.

Given the importance of this information, Congress enacted the FCRA to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517, at 1 (1969).

---

[2] The FCRA generally uses the term "consumer report," *see, e.g.*, 15 U.S.C. § 1681a(d) (defining "consumer report"), rather than the more common term "credit report." This brief uses the two terms interchangeably.

3

2. Since its enactment in 1970, the FCRA has governed the practices of CRAs that collect and compile consumer information into consumer reports for use by credit grantors, insurance companies, employers, landlords, and other entities that make eligibility decisions affecting consumers. To further ensure that consumer reports are accurate, in 1996 Congress amended the FCRA to also impose "duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153-54 (9th Cir. 2009). These duties include a requirement that furnishers investigate when consumers dispute information that a furnisher has given to a CRA. Under the Act, furnishers have an obligation to investigate potential inaccuracies in two circumstances: (i) when a consumer submits a dispute directly to a furnisher; and (ii) when a consumer submits an "indirect" dispute to a CRA, which must forward the dispute to the furnisher under § 1681i(a). 15 U.S.C. § 1681s-2(a)(8) and (b).

With an "indirect" dispute like the one here, when a consumer notifies a CRA that he or she disputes "the completeness or accuracy of any item . . . contained in a consumer's file," the CRA is required to "conduct a reasonable reinvestigation to determine whether the disputed information

is inaccurate." *Id.* § 1681i(a)(1)(A).[3] The CRA must also provide notice to
the furnisher, 15 U.S.C. § 1681i(a)(2), after which the furnisher is required
to conduct its own investigation, *id.* § 1681s-2(b). As part of that
investigation, the furnisher must "review all relevant information" that the
CRA provides. *Id.* § 1681s-2(b)(1)(B). And, after the investigation, the
furnisher must "report the results of the investigation" to the CRA. *Id.*
§ 1681s-2(b)(1)(C). "[I]f the investigation finds that the information is
incomplete or inaccurate," the furnisher must report that "to all other
consumer reporting agencies to which the person furnished the
information" as well as the nationwide CRAs. *Id.* § 1681s-2(b)(1)(D). And if
disputed information "is found to be inaccurate or incomplete or cannot be
verified," the furnisher must also promptly modify, delete, or permanently
block the reporting of that information "as appropriate, based on the result
of the reinvestigation." *Id.* § 1681s-2(b)(1)(E). These responsibilities are

---

[3] Within 30 days of receiving notice of the dispute, the CRA generally
must record the status of the disputed information or modify or delete the
disputed information, as appropriate, and promptly notify the furnisher
that the information has been modified or deleted. 15 U.S.C.
§ 1681i(a)(1)(A), (a)(5)(A). After completing a reinvestigation, the CRA
must notify the consumer of the results within five business days. *Id.*
§ 1681i(a)(6). If the CRA reinvestigation does not resolve the dispute, the
consumer has the right to add a brief statement about the dispute that will
appear or be summarized in all subsequent consumer reports from the CRA
that contain the information. *Id.* § 1681i(b)-(c).

part of the FCRA's overall framework for ensuring accuracy in credit reports.

A consumer may sue a furnisher for willful or negligent noncompliance with its obligation to respond to indirect disputes under Section 1681s-2(b). *Id.* §§ 1681n, 1681*o*.

3. Despite Congress's repeated efforts to promote accuracy, errors persist in consumer reports. Between October 2021 and September 2022, the Bureau received nearly 1,000,000 complaints about credit or consumer reporting, and the most common issue consumers identified was incorrect information on a credit report. *See* Consumer Fin. Prot. Bureau, Annual Report of Credit and Consumer Reporting Complaints (Jan. 2023) ("Annual Report"), at 11, https://files.consumerfinance.gov/f/documents/ cfpb_fcra-611-e_report_2023-01.pdf (consumerfinance.gov).

## B.   Factual and Procedural Background[4]

Plaintiff-Appellant Shelby Roberts rented an apartment in an apartment complex in Arden, North Carolina in 2019. After Ms. Roberts vacated the apartment in 2021, the complex retained her $500 security

---

[4] The facts are drawn from the description in the magistrate judge's recommendation. J.A. 63-84; *Roberts v. Carter-Young, Inc.*, No. 1:22cv1114, 2023 WL 4366059, at *2-8 (M.D.N.C. July 6, 2023). The procedural background is drawn from the district court's docket and documents included in it.

deposit and charged her almost $800 for alleged damage to the unit.[5]  Ms.

Roberts alleges that these damages "either never occurred, were ordinary

wear and tear items, or were grossly overstated." Specifically, she alleges

that the primary expense for which she was charged was the cost of a new

stove but that the complex's only asserted damage to the stove was that the

handle had become detached from the oven door. Ms. Roberts alleges that,

according to the lease and governing North Carolina law, this was an

ordinary maintenance issue that the complex could have fixed by

reattaching the handle, rather than replacing the stove at the cost of

hundreds of dollars.

Ms. Roberts refused to pay the invoice from the apartment complex,

and the complex referred the claim to Carter-Young, Inc. ("Carter-Young")

for debt collection. When Carter-Young sought to collect the debt, Ms.

Roberts responded with a letter disputing the claim as "obvious[ly]

-------

[5] After Ms. Roberts' lease expired in November 2020, her arrangement
with the apartment complex became a "month to month tenancy that could
be terminated by either [party] by providing 30-days written notice." The
complaint alleges that the complex tried to lease the apartment to another
tenant without providing Ms. Roberts with the requisite notice. It further
alleges that after Ms. Roberts refused to vacate her apartment without that
notice, the complex sought to retaliate against Ms. Roberts by improperly
charging her.

retaliatory and false." Carter-Young reported the debt to the three major CRAs.

Ms. Roberts filed a formal dispute with the three CRAs, who forwarded the dispute to Carter-Young. Carter-Young investigated the disputed information, allegedly by asking the apartment complex to recertify the validity of its claim. Because the apartment complex confirmed the validity of the claim, Carter-Young did the same, resulting in the three CRAs continuing to report this debt. Ms. Roberts alleges that she refiled formal disputes with the CRAs, but Carter-Young continued to recertify the debt after neglecting to conduct any meaningful investigation.

Ms. Roberts filed this suit in December 2022, alleging that Carter-Young violated 15 U.S.C. § 1681s-2(b) when it attested to the accuracy of the debt allegedly owed to the apartment complex without conducting reasonable investigations following receipt of her indirect disputes. Carter-Young moved to dismiss for failure to state a FCRA claim, arguing that the FCRA's reasonable investigation requirement applies only to asserted factual inaccuracies, not disputes involving legal questions like those it alleges are at issue in Ms. Roberts' dispute with the apartment complex — e.g., whether, under the operative lease and state law, the apartment complex appropriately charged Ms. Roberts, including for a new stove. In

8

response, Ms. Roberts argued that furnishers have an obligation to investigate both legal and factual disputes. In support, she relied on the Ninth Circuit's decision in *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246 (9th Cir. 2022), which held that "FCRA will sometimes require furnishers to investigate, and even to highlight or resolve, questions of legal significance." *Id.* at 1253. Plaintiff also argued that the issues she raised about the debt are factual, rather than legal.

The magistrate judge recommended granting the motion to dismiss and the district court adopted the magistrate's recommendation and dismissed the case. The magistrate judge acknowledged the Ninth Circuit's decision in *Gross* (as well as the Seventh Circuit's decision in *Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020) (en banc)) in recognizing that "[t]wo circuit courts have suggested that furnishers must consider *legal* issues related to a debtor's alleged liability"J.A. 73 (emphasis added).[6] But the magistrate judge nevertheless found that "the contrary view (that the FCRA does not impose a duty on furnishers to resolve legal questions), 'certainly appears to represent the prevailing view.'"*Id.* In support, the

---

[6] The Seventh Circuit in *Denan* noted that "it makes sense that furnishers shoulder this burden" to investigate legal disputes; "they assumed the risk and bear the loss of unpaid debt, so they are in a better position to determine the legal validity of a debt." 959 F.3d at 295.

magistrate judge cited *Mohnkern v. Equifax Info. Servs., LLC.*, No. 19-CV-6446L, 2021 WL 5239902, at *6 (W.D.N.Y. Nov. 10, 2021) — a case decided before *Gross* and other recent decisions like *Sessa v. Trans Union, LLC,* 74 F.4th 38 (2d Cir. 2023), which reject the notion that "legal" inaccuracies need not be investigated under the FCRA. The magistrate judge also distinguished *Gross* on its facts, pointing out that in *Gross* "some prior operation of law . . . had rendered the debt invalid . . . [so] the defendant in *Gross* did not need to resolve a legal issue, only ascertain that resolution of a legal issue had previously occurred." Finally, the magistrate judge rejected plaintiff's contention that her dispute was factual rather than legal, reasoning that investigating (and determining) the validity of the debt would have required Carter-Young to interpret Plaintiff's lease and North Carolina landlord-tenant law. *Roberts v. Carter-Young, Inc.*, No. 1:22-cv-1114, 2023 WL 4366059, at *7-8 (M.D.N.C. July 6, 2023).

Because it concluded that Carter-Young had no obligation to investigate Ms. Roberts's purportedly "legal" dispute at all, the court did not reach the question of whether Carter-Young's investigation was reasonable.

Plaintiff noticed this appeal on August 31, 2023.

10

## SUMMARY OF ARGUMENT

Section 1681s-2(b) of the Fair Credit Reporting Act requires entities that furnish information to consumer reporting agencies to reasonably investigate consumers' disputes regarding the completeness or accuracy of the information furnished. The statute does not distinguish between legal and factual disputes. Nevertheless, the district court concluded that §1681s-2(b) does not require furnishers to investigate "legal disputes" (as opposed to factual ones). That conclusion is not supported by the text of the statute. Nor does the statute authorize furnishers to forgo investigating a "legal" dispute simply because there may be colorable arguments on both sides. That could be true even of purely factual disputes, and, in any event, a furnisher often cannot know whether there are colorable arguments on both sides until *after* it conducts some investigation (including, for example, assessing whether courts have yet resolved any legal question at issue. Moreover, any burden imposed on furnishers is mitigated by the fact that the investigation—including into a legal dispute—need only be reasonable, a standard that considers the context of the dispute (such as its novelty).

The district court's ruling excepting "legal" disputes risks exposing consumers to more inaccurate credit reporting, conflicts with other circuit

decisions, and undercuts the remedial purpose of the FCRA. Moreover,
separating "factual" disputes from "legal" ones is difficult to accomplish in
practice and would allow furnishers to evade their statutory obligations by
characterizing nearly any dispute as a "legal" one. This Court should clarify
that the FCRA requires furnishers to conduct a reasonable investigation
when it receives an indirect dispute, regardless of whether the dispute could
be described as "legal."

Separately, this Court should clarify that, to the extent the district
court held that "the reasonableness of an investigation turns" always and
only "on the 'information *within the furnisher's possession*,'" it erred.

## ARGUMENT

I. **The FCRA Requirement for Furnishers to Reasonably
Investigate Disputes Applies to Disputes that Implicate
Legal Issues, Not Just Disputes Raising Purely Factual
Questions**

A. **The FCRA's Text Applies Equally to Disputes that Could
Be Characterized as Legal**

Under the FCRA, a furnisher who receives notice of a dispute about
the completeness or accuracy of information it provided to a CRA is
required to "conduct an investigation with respect to the disputed
information." 15 U.S.C. § 1681s-2(b)(1)(A). By its plain terms, the statute
requires investigation of *all* such disputes – it does not distinguish disputes
that pose "factual" questions from those that implicate "legal" questions.

12

Moreover, nothing in the statutory text even *implies* that the FCRA requires furnishers to investigate only disputes that can be described as "factual." Congress required furnishers to investigate any dispute about "the completeness or accuracy of information [a furnisher] provided to a CRA." 15 U.S.C. §§ 1681i(a)(1)(A), (a)(2), 1681s-2(b)(1). Nothing about these words suggests Congress intended to exclude from the investigation requirement disputes about information that is incomplete or inaccurate on account of legal issues.[7]

For example, the word "accuracy" is not limited to *factual* accuracy. Rather, "accuracy" – defined as "freedom from mistake or error"[8]– is also naturally understood to refer to freedom from legal errors. The Supreme Court recently acknowledged as much when it explicitly recognized that "[i]naccurate information" is just as likely to "arise from a mistake of law or a mistake of fact" and that a "legal requirement" can "render[] [information] inaccurate." *Unicolors, Inc. v. H&M Hennes & Mauritz, LP*, 595 U.S. 178, 185 (2022) (explaining that it would be "inaccurate" for a

---

[7] Contrary arguments that some furnishers and amici have made in other cases are thus incorrect. *See, e.g.*, Appellees Answer Br., *Holden v. Holiday Inn Club Vacations, Inc.*, No. 22-11014 (11th Cir. Feb. 8, 2023).

[8] *Accuracy*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/accuracy (last visited Dec. 7, 2023).

copyright registrant to treat multiple works as copyright-able under a single application if those works did not satisfy the regulatory requirement that they be included in the "same unit of publication"). A statement that a consumer owes $500 when the consumer does not owe $500 is naturally understood to be not "accurate" regardless of whether the law or the facts (or some combination) is the reason the consumer does not owe the money.

Neither does the word "complete" in the statutory text suggest that furnishers need only investigate disputes that challenge the *factual* "completeness" of furnished information.  In ordinary usage, "complete" is defined as "having all necessary parts, elements, or steps."[9] That term naturally applies equally to disputes "about the completeness ... of information" that allege that reported information is missing "necessary parts, elements or steps" for a reason that can be described as legal (as opposed to factual).

Likewise, the term "investigate" does not imply that furnishers need address only factual disputes. To "investigate" something is to "observe or

_____

[9] *Complete*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/complete (last visited Dec. 7, 2023).

study [it] by close examination and systemic inquiry."[10] Legal questions are just as capable as factual issues of being studied closely and systemically. And this court has specifically used the verb "investigate" to refer to inquiries into legal, as well as factual, topics. *See, e.g.,* B*akker v. Grutman,* 942 F.2d 236, 240 (4th Cir. 1991) ("Rule 11 imposes upon substitute counsel a duty to investigate the legal and factual sufficiency of the claims he or she takes up." (emphasis added)).

Ultimately, when a consumer disputes "the completeness or accuracy" of information furnished about a debt, the inquiry is typically whether the consumer owes the amount asserted. Depending on the dispute, that inquiry may involve factual questions, legal questions, or both. Under § 1681s-2(b)'s text, the furnisher must "conduct an investigation" about the disputed information to reach a judgment about whether the consumer owes the amount asserted.

### B. The Fact That Some Purportedly "Legal" Disputes Have Colorable Arguments on Both Sides Does Not Excuse Furnishers from Considering Them

The fact that "legal" disputes sometimes involve questions that have not previously been resolved by a court and that may have colorable

---

[10] *Investigate*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/investigate (last visited Dec. 7, 2023).

Case 4:25-cv-01614    Document 42-1    Filed on 11/17/25 in TXSD

arguments on both sides likewise provides no basis to excuse furnishers from investigating any dispute that could be described as "legal." For one thing, some *factual* disputes also have colorable arguments on both sides— like where a furnisher claims that a consumer agreed to pay an amount while the consumer claims that someone other than her agreed, or in other he-said-she-said situations with no tangible evidence or corroborating witnesses. So, any concern about requiring furnishers to investigate disputes where there are colorable arguments on both sides would not logically support distinguishing legal disputes from factual ones for purposes of § 1681s-2(b)'s investigation requirement.

Nor is there any basis to read the FCRA as requiring furnishers to investigate only those disputes (whether described as "legal" or not) where there are *not* colorable arguments on both sides — or, as one court as put it, only disputes that can be "readily and objectively" resolved (like where they involve only "settled" legal questions or the "straightforward application of law to facts"), *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270-271 (2d Cir. 2023). Furnishers typically could not know from the face of a dispute whether a dispute can be readily and objectively resolved. Even if a dispute raises a pure legal claim that the consumer does not owe the debt for a specified legal reason, the furnisher might not know upfront whether

16

courts had resolved the legal question at issue; they would have to conduct
*some* investigation to determine that. As a result, it would not make sense
to say furnishers have no obligation to investigate at all where the dispute
cannot be readily and objectively resolved—because a furnisher often
cannot know whether a dispute falls in that category until *after* the
furnisher conducts some investigation. How much more the furnisher must
do to investigate once it determines that an issue is unsettled and there are
colorable arguments on both sides is a question about what is
"reasonable" under the FCRA, not a question about whether the furnisher
must investigate at all.

In concluding that furnishers have no obligation to investigate "legal"
disputes, some courts have reasoned that furnishers are not "qualified . . .
to resolve" those sorts of matters; only "a court of law" is. *See, e.g.*, *Chiang
v. Verizon New Eng. Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) (cleaned up). But,
for starters, furnishers are fully competent to consider and investigate legal
disputes – even where there may be colorable arguments on both sides.
Furnishers consider those sorts of issues all the time; that is an integral part

of making decisions about what they can bill consumers for and what debts

they can collect.[11]

The Bureau's regulations governing direct disputes[12] confirm that

furnishers are capable of, and are expected to, investigate legal issues of

liability. Those regulations specifically require furnishers to conduct a

reasonable investigation of direct disputes that relate to "[t]he consumer's

---

[11] The district court held that furnishers have no obligation to investigate "legal" disputes, relying on cases that cite *Chiang*. But *Chiang* does not explain how the FCRA's text or purpose supports its holding that furnishers need not investigate "legal" disputes. And *Chiang* relied, in turn, on prior cases holding that the FCRA does not require *CRA*s to investigate disputes that can be characterized as "legal." Even if it were proper to interpret § 1681i as excusing *CRA*s from investigating legal disputes – which it is not – it would not follow that *furnishers'* investigatory obligations under a different provision, 15 U.S.C. § 1681s-2(b)(1), are similarly limited. *See Gross*, 33 F.4th at 1253 (*CRA*s' obligations under § 1681i should not control the scope of *furnishers'* investigatory obligations under § 1681s-2(b)(1)). While some courts have (incorrectly) concluded that CRAs lack institutional competency to investigate legal disputes, the same could not be said for furnishers: Furnishers generally have superior access to relevant information regarding disputed debts, and furnishers are necessarily considering whether consumers owe the debt when they make decisions about what debts they can collect. Thus, furnishers' investigatory obligations "will often be more extensive." *Id.* In any event, even in the context of CRA investigations, the Second Circuit recently held that "there is no bright-line rule providing . . . that only purely factual . . . errors are actionable under the FCRA." *Sessa,* 74 F.4th at 43.

[12] The Bureau has not issued regulations addressing indirect furnisher disputes.

18

Case 4:25-cv-01614   Document 42-1   Filed on 11/17/25 in TXSD

liability for a credit account or other debt with the furnisher," a question
that will often implicate "legal" questions. 12 C.F.R. § 1022.43(a), (a)(1).

In addition, the concern that furnishers are not "qualified" to address
"legal" disputes misunderstands the nature of furnishers' obligation to
investigate such disputes. Where a dispute raises an unsettled "legal"
question, that may affect what the furnisher needs to do to fulfill its
obligation to reasonably investigate the dispute – but it does not allow the
furnisher to avoid any investigation whatsoever. In particular, upon
receiving notice of a dispute, a furnisher's obligation is to consider the
dispute, reasonably investigate it, and determine whether, in light of the
issue raised, the furnisher has a sufficient basis to verify the information.
This obligation exists whether the dispute raises issues that are "factual" or
"legal" in nature. Just as a furnisher confronted with a "factual" dispute
might need to review account-level documentation or other records to
determine whether it has "sufficient evidence to support the conclusion that
the [disputed] information was true," *Hinkle v. Midland Credit Mgmt.,
Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016), a furnisher confronted with a
dispute raising a "legal" question might need to review the terms of the
contract, a statute, or other relevant authorities to determine whether it has

a sufficient legal basis to support the conclusion that the debt is owed in the amount asserted.

If after that investigation, the furnisher has a sufficient basis to reasonably conclude that the debt is owed in the amount asserted, it can report that the debt has been verified and continue to furnish information about the debt to CRAs. *See id.* at 1301.[13] If, by contrast, the furnisher's reasonable investigation of the dispute causes the furnisher to realize that it was mistaken, and that the consumer does not actually owe the debt, or that the disputed information "cannot be verified," the furnisher must delete the debt from the information it furnishes to the CRAs. 15 U.S.C. § 1681s-2(b)(1)(E) (providing that if information is found to be "incomplete or inaccurate," or "cannot be verified" the furnisher must modify, delete, or permanently block the information, as appropriate).

---

[13] Of course, the furnisher's conclusion may or may not be correct—only a court can conclusively answer that question. So, to ensure that the reporting is not "misleading," this Court's precedent requires a furnisher, in at least some circumstances, to report that the consumer diputes the debt. *See Saunders v. Branch Banking and Tr. Co. of Va.*, 526 F.3d 142 (4th Cir. 2008) (holding that failing to note a consumer's dispute is misleading and violates § 1681s-2(b), at least where the dispute turns out to be meritorious, and reserving judgment on whether the furnisher also violates that provision if it fails to report a bona fide dispute that ultimately turns out to be unmeritorious).

The upshot is that furnishers must consider consumers' disputes, even if they implicate "legal" questions or other unsettled questions that have colorable arguments on both sides and that only a court could conclusively resolve. Even though a court may be the ultimate arbiter of whether the debt is owed (in a debt-collection action or a declaratory judgment action by the consumer, for example), the furnisher maintains an obligation to consider disputes that raise legal questions, conduct a reasonable investigation, and determine whether, in light of the issues raised in the dispute, it has a sufficient basis to verify the debt.

There is therefore no reason to carve out of furnishers' investigation requirement disputes that can be classified as "legal" or any other disputes involving unsettled questions that may have colorable arguments on both sides.

### C. An Atextual Exception for "Legal" Disputes Could Swallow the Reasonable Investigation Rule

This Court should also decline to excuse furnishers from investigating purportedly "legal" disputes because many disputes concerning information in consumer reports could be characterized as legal—which would create an exception that would swallow the rule. For example, consumer reports generally include information about an individual's debt obligations. Debts are generally creatures of contract. Thus, many

21

inaccurate representations pertaining to an individual's debt obligations arguably could be characterized as legal inaccuracies, given that determining the truth or falsity of the representation could require review of a contract. *Cf. Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 107 (2d Cir. 2013) (explaining that a question of "contractual interpretation … is a question of law").

Carving out legal disputes is ripe for abuse and would likely prove unworkable in practice. "[C]lassifying a dispute over a debt as 'factual' or 'legal' will usually prove a frustrating exercise." *Cornock v. Trans Union LLC*, 638 F. Supp. 2d 158, 163 (D.N.H. 2009).

The same dispute could be characterized as either factual or legal — or both. For example, the Seventh Circuit recently considered a set of consolidated cases in which the plaintiffs claimed they did not owe certain debts to the creditors listed on their credit reports because the debts had purportedly been assigned to other companies. The Seventh Circuit noted that "[i]n each of these disputes . . . the facts present a similar pattern." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 565 (7th Cir. 2021). Nonetheless, the district courts offered different views of whether those materially identical disputes were "legal" or "factual": Some courts determined that whether the creditors owned the debts was a question of

22

law; one decided that same question was a mixed question of law and fact; and still other courts "eschewed a rigid distinction between law and fact and focused on the institutional competency of the [CRAs] to resolve the claims." *Id.*

Likewise, in another case, a district court noted that a plaintiff's dispute about a fraudulently opened credit card account "could be called 'factual' in the sense that . . . [plaintiff] did not sign the credit card application as a matter of fact; but it could also be called 'legal' in the sense that, as [the CRA] suggests, [plaintiff] claimed that he therefore had no liability as a matter of law while [the bank] claimed otherwise based on alleged payments to it out of an account he jointly held." *Cornock*, 638 F. Supp. 2d at 163.

As another example, a district court (in a case recently overturned by the Second Circuit) concluded that a dispute was "legal," and therefore not cognizable under the FCRA, simply because it involved the terms of a contract. In that case, a CRA erroneously reported that a consumer owed a large "balloon payment" at the end of her car lease, when in fact her car lease contained no such payment obligation whatsoever. *Sessa v. Linear Motors, LLC*, 576 F. Supp. 3d 1, 5 (S.D.N.Y. 2021), *reversed on appeal, Sessa,* 74 F.4th 38. The figure listed as a "balloon payment" on her credit

23

report was simply a notation of the residual value of the car at lease-end, as the furnisher itself acknowledged. *Id.* Despite the reporting being clear error, the district court rejected the consumer's FCRA claim because it viewed that "contractual" issue as a "legal" dispute (i.e., resolving the dispute required reading the contract). *Id.* at 13-14. Given that debts generally arise from contracts, and thus almost any dispute about a debt might require a review of the contract terms, the district court's analysis shows how easily an exclusion for "legal" inaccuracies could create a loophole that would gut the requirement to investigate disputes.[14] On

---

[14] As a result of the difficulty in cleanly distinguishing legal and factual issues, even in the context of CRAs' obligations under the FCRA, some courts have correctly rejected a formal legal/factual distinction (some even before the recent *Gross* and *Sessa* decisions). For example, "the Ninth Circuit has endorsed holding a CRA liable under the FCRA when it 'overlooks or misinterprets' . . . publicly available documents of *legal* significance." *Nelson v. Ocwen Loan Servicing, LLC,* No. 3:14-cv-00419-HZ, 2014 WL 2866841, at *5 (D. Or. June 23, 2014) (emphasis added) (relying on *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1068-70 (9th Cir. 2008)). Similarly, the Second Circuit, in the course of holding that "[t]he unresolved legal question . . . render[ed] [a] claim non-cognizable under the FCRA," explained that "this holding does not mean that credit reporting agencies are never required by the FCRA to accurately report information derived from the readily verifiable and straightforward application of law to facts." *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023). And even courts that maintain a more rigid factual-legal distinction have found that if a legal issue has already been adjudicated by another court or otherwise resolved, a dispute raising that issue should be considered factual, rather than legal. *See, e.g., Losch v. Nationstar Mortg., LLC,* 995 F.3d 937, 946-47 (11th Cir. 2021); *Hopkins v. I.C. Sys.*, No. CV 18-2063, 2020 WL 2557134, at *8 (E.D. Pa. May 5, 2020).

appeal, the Second Circuit reversed, explicitly rejecting a rigid distinction and holding that the FCRA does not contemplate a "threshold inquiry into whether an alleged inaccuracy was 'legal' and therefore non-cognizable under the FCRA." *Sessa v. Trans Union LLC,* 74 F.4th 38, 40 (2d Cir. 2023).

Similarly, here, the dispute at issue could be characterized as legal or factual or both. Whether Ms. Roberts owed the apartment complex for the cost of replacing the oven turns in part on the factual question whether the oven had damage only to its handle, or more extensive damage. It also implicates the arguably "legal" question of whether, under the contract and governing law, Ms. Roberts could be charged if only the oven handle was broken.

Of course, just because a furnisher might classify a dispute as "legal" does not necessarily mean a court would agree with that classification. But furnishers with sufficient resources could afford to raise this as a defense to every claim involving an insufficient investigation, disadvantaging consumers in the process, while tying up courts with litigation about labels, even in cases that should otherwise be easily resolved on summary judgment for the consumer because the furnisher conducted no

25

investigation, or such minimal investigation that no court could consider it reasonable.

Particularly given the difficulty in distinguishing "legal" from "factual" disputes, this Court should clarify there is no exemption in the FCRA's reasonable investigation requirement for disputes that raise legal questions. Such an exemption would undermine the purpose of the reasonable-investigation requirement to ensure accuracy on credit reports. It would also result in an unworkable standard where mixed questions of fact and law are presented, and it would encourage furnishers to ignore their statutory obligations to conduct a reasonable investigation when a dispute could be characterized as "legal."

## II. To Conduct a Reasonable Investigation, the Furnisher May Need to Look Beyond Information Already in its Possession

The district court here erred in stating that "the reasonableness of an investigation turns on the 'information *within the furnisher's possession*.'" *Roberts*, 2023 WL 4366059 at *7 (quoting *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 253 (4th Cir. 2017)) (emphasis added by *Roberts*).  Depending on the circumstances, a furnisher may be required to look beyond the information it already has to fulfill its obligations under the FCRA.

The FCRA requires furnishers to conduct a reasonable investigation in response to an indirect dispute. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004). What constitutes a "reasonable" investigation is case specific; the investigation must be "reasonable under the circumstances. It may be either simple or complex, depending on the nature of the dispute." Fed. Trade Comm'n, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations (2011) ("FTC Staff Report"), at 96, https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

Thus, depending on the circumstances, the furnisher may or may not need to look beyond the information it already possesses to fulfill its reasonable investigation obligation. For instance, if the evidence within the furnisher's possession is "sufficient ... to support the conclusion that the [disputed] information [i]s true," the furnisher need not look beyond the information that it already has; it can report that its investigation verified the debt. *Hinkle*, 827 F.3d at 1303. If, however, the "furnisher does not already possess evidence establishing that an item of disputed information is true, 15 U.S.C. § 1681s-2(b) requires the furnisher to seek out and obtain

27

such evidence" unless "the evidence necessary to verify disputed information either does not exist or is too burdensome to acquire." *See id.* at 1303. If a furnisher "reasonably determines" that seeking further information "would be fruitless or unduly burdensome," it need not do so and instead can report to the CRA that the disputed information could not be verified, in which case the CRA would remove the information from the consumer's report. *Id.*; *see also* 15 U.S.C. § 1681i(a)(5)(A) (requiring CRA to delete information that cannot be verified).

The district court erroneously concluded otherwise, relying on this Court's unpublished opinion in *Daugherty v. Ocwen Loan Servicing, LLC*, which stated that the reasonableness of an investigation turns on the "'information *within the furnisher's possession.*'" *Roberts*, 2023 WL 4366059 at *7 (citing *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 253 (4th Cir. 2017)) (emphasis added by *Roberts*). But, besides being nonbinding, that passing statement does not reflect this Court's considered view because the Court in *Daugherty* did not actually consider or decide whether a furnisher would ever be required to seek information beyond what it already possessed. It did not need to because, there, the furnisher "possessed the information in its own records necessary to correct the erroneous data" the consumer had disputed. *Daugherty*, 701 F. App'x at

257. And the Court held that the district court had correctly instructed the jury that the reasonable-investigation requirement "does not *necessarily* require [the furnisher] to consult external sources" – an instruction that implies that consulting external sources may *sometimes* be required. *Id.* at 257 (emphasis added).[15] The district court here thus misread *Daugherty* to effectively hold that furnishers need not look beyond information within their possession to conduct a reasonable investigation under the FCRA. That is incorrect, as the Eleventh Circuit explained. *See Hinkle*, 827 F.3d at 1303.

Indeed, if a furnisher never needed to look beyond information in its possession to investigate a dispute, the furnisher here — a third-party debt

---

[15] Various recent cases recognize that it may be insufficient for a furnisher to limit its inquiry to materials in its possession. *See, e.g., Petras v. Navy Fed. Credit Union,* No. 2:20-cv-00874-RFB-BNW, 2022 WL 526138 (D. Nev. Feb. 22, 2022) (denying furnisher summary judgment when it limited its investigation of fraud dispute "to its own internal documents," did not consider police report and information in consumer's dispute letter, and "did not contact a single witness"); *Watson v. Citi Corp.,* No. 2:07-cv-0777, 2009 WL 161222 (S.D. Ohio Jan. 22, 2009) (finding credit card company did not conduct reasonable investigation when it failed to contact its collection agency to verify or refute consumer's claim that agency had compromised and settled debt and instead "merely relied on its own incomplete records"); *Myrick v. Equifax Info. Servs., LLC.*, No. 5:15-CV-00562-BR, 2017 WL 4798154 (E.D.N.C. Oct. 24, 2017) (finding factual issue as to whether investigation was reasonable because information in the entity's possession "could have been used to access and view" court records showing the relevant account had been discharged in a bankruptcy case).

29

collector that the apartment complex hired to collect the debt that Ms.
Roberts purportedly owed it — would not even have had to check with the
apartment complex about Ms. Roberts's claims and the complex's response.
The FCRA does not permit such insufficient inquiries.

## CONCLUSION

For the foregoing reasons, this Court should hold that, under the
FCRA, furnishers must reasonably investigate indirect disputes, regardless
of whether the dispute can be characterized as legal, and regardless of
whether it may entail seeking information beyond what the furnisher
already possesses.

December 8, 2023

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Deputy General Counsel*
Kristin Bateman
  *Assistant General Counsel*

/s/ *Karen S. Bloom*
Karen S. Bloom
  *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 344-5146
karen.bloom@cfpb.gov

Anisha S. Dasgupta
  *General Counsel*
Mariel Goetz
  *Acting Director of Litigation*

30

Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-2763
mgoetz@ftc.gov

## Certificate of Compliance

This brief complies with the length limits permitted by Federal Rule of Appellate Procedure 29(a)(5). The brief is 6,497 words, excluding the portions exempted by Rule 32(f). The brief's typeface and type style comply with Rule 32(a)(5) and (6).

December 8, 2023

/s/ *Karen S. Bloom*
Karen S. Bloom
   *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-7012
karen.bloom@cfpb.gov

## Certificate of Service

I hereby certify that on December 8, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

December 8, 2023                    /s/ *Karen S. Bloom*
                                   Karen S. Bloom
                                     *Senior Counsel*
                                   Consumer Financial Protection Bureau
                                   1700 G Street, NW
                                   Washington, D.C. 20552
                                   (202) 435-7012
                                   karen.bloom@cfpb.gov